FILED
2021 Oct-06  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| Monica Antinoro, | ) | |
| | ) | |
| Plaintiff. | ) | Civil Action No.: |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Buffalo Rock Company, | ) | |
| | ) | |
| Charles Gissendanner, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

**COMES NOW** the Plaintiff, Monica Antinoro, ("Plaintiff") by and through her undersigned counsel, and hereby files this Complaint against Buffalo Rock Company, ("Defendant Buffalo Rock") and Charles Gissendanner ("Gissendanner") and seeks redress for discrimination and retaliation suffered in Plaintiff's capacity as an employee of the Defendant Buffalo Rock. Plaintiff also seeks redress for battery against Gissendanner, Respondeat Superior, and failure to hire and train against Defendant Buffalo Rock.  Plaintiff has been discriminated against by the Defendant Buffalo Rock on account of Plaintiff's gender and subjected to a hostile work environment, both in violation of **Title VII of the Civil Rights Act of 1964**, as amended, **42 U.S.C §§ 2000e _et seq.,_** and any other cause(s) of action, including

battery, Respondeat Superior, and failure to train and supervise, that can be inferred from the facts set forth herein and states the following:

## **JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4) for Counts I, and II.

2. Plaintiff also seeks to bring pendent claims pursuant to 28 U.S.C. § 1367 and this Court's judicial powers for Counts III, IV, and V.

3. The unlawful employment acts and torts alleged herein took place within the Southern Division of the Northern District of Alabama.

4. Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to **Title 28, U.S.C. § 1391** and the Local Rules of the United States District Court for the Northern District of Alabama.

## **PARTIES**

5. Plaintiff Monica Antinoro, a female, is domiciled in the state of Alabama and is over the age of nineteen (19).

6. At all relevant times the Plaintiff was an "employee" of the Defendant under Title VII.

7. The Defendant, Buffalo Rock Company, is a domestic corporation located in the State of Alabama.

8. The Defendant, Charles Gissendanner, was the Chief Operations Officer for Defendant Buffalo Rock, is domiciled in the State of Alabama, and is over the age of nineteen (19).

9. At all relevant times, Defendant Buffalo Rock was an "employer" under Title VII.

10. Defendant Buffalo Rock employs over fifteen (15) employees and is subject to Title VII.

## COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS OF TITLE VII

11. Plaintiff has complied with the jurisdictional requirements of Title VII that on to wit: that on or about the 11th day of May 2021, and again on or about May 20, 2021, and again on or about June 22, 2021, Plaintiff caused Charges of Discrimination in employment to be filed with the Equal Employment Opportunity Commission (hereinafter the "EEOC") in accordance with Section 705 of Title VII.

12. A Notification of Right to Sue letter was received July 21, 2021, and this Complaint has been filed within ninety (90) days of receipt of said Notification of Right to Sue. A copy of the notice is attached as Exhibit 1.

## GENERAL FACTS

13. Plaintiff began working for Defendant Buffalo Rock in or around 2019.

14. Plaintiff is employed as a CME Admin Tech Support.

15. Starting around August of 2020 the Chief Operations Officer of Defendant Buffalo Rock and Plaintiff's Supervisor, Charles Gissendanner, began subjecting Plaintiff to a hostile work environment.

16. The hostile work environment culminated in Charles Gissendanner physically and aggressively grabbing the Plaintiff, leaving her arm covered in bruises and blood blisters.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.

### (Hostile Work Environment Against Defendant Buffalo Rock)

17. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-16 above, as if fully set out herein.

18. The Plaintiff is a female and a member of a protected class.

19. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., as Defendant Buffalo Rock has engaged in the practice of a hostile work environment against Plaintiff.

20. As of the filing of this Complaint Plaintiff is still currently employed with the Defendant Buffalo Rock.

21. Starting around August of 2020 Plaintiff began being subjected to a hostile work environment.

22. On a near daily basis, during Plaintiff's Monday-Friday work schedule, Gissendanner would call the Plaintiff a "stupid b****."

23. On a near daily basis, during Plaintiff's Monday-Friday work schedule, Gissendanner would call the Plaintiff a "dumb a**."

24. When new employees were hired Gissendanner would talk to them about how the Plaintiff was "no good."

25. Gissendanner would also tell new employees that Plaintiff was a troublemaker, despite the fact that she had never been disciplined with the Defendant Buffalo Rock.

26. Gissendanner would constantly yell at the Plaintiff and tell her she just "needed to leave."

27. Around February of 2020 Gissendanner came into the Plaintiff's office in a hostile manner while she was working, yelled "what are you doing," and threw all the papers off her desk onto the floor, requiring her to pick them up.

28. This was done in an effort to intimidate the Plaintiff and scare her.

29. This hostile work environment culminated on or about May 4, 2021.

30. On May 4, 2021, Gissendanner came up behind the Plaintiff and aggressively grabbed her on the arm.

31. This grabbing was done with such excessive force that Plaintiff was yanked backwards and pulled towards Gissendanner.

32. Plaintiff asked Gissendanner to stop but he would not let go.

33. Even after the Plaintiff expressed that he was hurting her he did not let go.

34. Plaintiff was left with bruises and blood blisters on her arm after this incident.

35. Prior to coming up behind her and grabbing her arm Gissendanner called the Plaintiff a "dumb a**."

36. After grabbing the Plaintiff's arm, Gissendanner tried to force Plaintiff in his office, causing the Plaintiff to fear for her physical safety.

37. Plaintiff fled to the bathroom for safety and after leaving the bathroom reported what had occurred to another supervisor, Ryan Faust, which was company policy.

38. Plaintiff had to leave work as she was terrified and crying due to the pain she was in.

39. Prior to and after this incident Plaintiff reported Gissendanner to Donna West in HR, but nothing was done to stop the treatment she was subjected to.

40. Plaintiff has a good faith belief that Gissendanner had subjected other women to similar treatment and that Defendant Buffalo Rock was aware but did not do anything to stop him.

41. All of the above listed conduct Plaintiff was subjected to are actions that men were not subjected to.

42. Plaintiff's work reviews were always exemplary, and she has never been

written up with the Defendant Buffalo Rock.

43. Plaintiff was unable to complete her job due to the stress, fear of verbal and mental abuse, and threat of physical harm to her person.

44. Based on the treatment Plaintiff was subjected to, she was forced to take FMLA leave and, at the time of filing this Complaint, is still on leave.

45. Defendant Buffalo Rock's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

46. Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem and other damages as a direct result of Defendant Buffalo Rock's unlawful discrimination.

**WHEREFORE,** Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring the Defendant Buffalo Rock's past practices herein complained of to be unlawful.

B. Order Defendant Buffalo Rock to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C. Order Defendant Buffalo Rock to make whole the Plaintiff by providing other affirmative relief necessary to eradicate the effects of Defendant Buffalo Rock's unlawful employment practices.

D. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial.

E. Award punitive damages to be determined by a jury at trial.

F. Grant such further relief as the Court deems necessary and proper.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a) AGAINST DEFENDANT BUFFALO ROCK

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-16 above, as if fully set out herein.

48. After her numerous reports to HR on or about May 11, 2021, Plaintiff again began to participate in a protected activity when she filed a good faith Charge of Discrimination against the Defendant Buffalo Rock with the EEOC.

49. The week of May 10, 2021, Plaintiff used vacation time based on the harassment and PTSD she had been subjected to and Gissendanner grabbing

her on May 4, 2021.

50. On May 17, 2021, Plaintiff returned to work.

51. Plaintiff has a good faith belief that on or about May 17, 2021, both Defendant Buffalo Rock and Gissendanner had become aware of Plaintiff's EEOC Charge.

52. Upon her return to work the verbal abuse by Gissendanner did not stop.

53. Gissendanner was still calling Plaintiff a "dumb a**" and a "stupid b****."

54. Furthermore, Plaintiff was stripped of all her normal job duties and sent to inventory where she would count and input inventory of parts of vending machines into a computer.

55. Prior to this Plaintiff was employed as CME Admin Tech Support and her job duties included controlling tech for Defendant, entering time for employees, pulling parts for Defendant on what needed to be worked on each day, controlling all decal work, controlling all graphics including placing them on machines, handling invoices from other companies, placing orders, coordinating with shipping and receiving on orders, and informing techs of what their duties would be each day.

56. This stripping of job duties would have been considered a demotion.

57. On May 18, 2021, Gissendanner yelled at the Plaintiff to "take her f***ing needs elsewhere."

58. Then on May 20, 2021, Gissendanner yelled that he "was not f***ing talking to you alone;" this was directed at the Plaintiff.

59. Gissendanner was not removed as Plaintiff's supervisor.

60. This adverse employment action of stripping Plaintiff of her normal job duties and continued harassment was a direct retaliation to Plaintiff filing her EEOC Charge on May 11, 2021.

61. At this point on or about May 20, 2021, Plaintiff filed her second Charge of Discrimination, this one for retaliation.

62. On May 27, 2021, Plaintiff was called into a meeting with Defendant Buffalo Rock in which she was asked to sign a document which seemed to waive her right to sue.

63. The document contained many untruthful assertions and Plaintiff was not allowed to have her attorneys review it.

64. After this meeting co-employees became aware of the above listed discriminatory conduct.

65. Co-employees began calling Plaintiff a "b****" and Plaintiff was told that they heard "Charles was fired for slapping his girlfriend."

66. Plaintiff was told by Ryan Faust that these circumstances had made his job "a lot harder."

67. Plaintiff reported this conduct, but nothing was done to stop it.

68. Further, after filing her two Charges of Discrimination and the meeting with Defendant Buffalo Rock, Plaintiff was told she had been given five (5) disciplinary points for the vacation time she took the week of May 10, 2021.

69. Prior to this Plaintiff only had .5 points and no disciplinary history.

70. Gaining too many points would lead to Plaintiff's termination.

71. Plaintiff inquired why she was given points but never received an answer.

72. On or about June 15, 2021, James Rodgers, who Plaintiff understood could be her new supervisor, informed her that he was looking into the point issue.

73. Plaintiff began to make note of this as she always did in her notebook.

74. James yelled at the Plaintiff and told her to stop writing things down.

75. This incident caused the Plaintiff distress that caused her to see a doctor.

76. Based on this continued treatment and retaliation Plaintiff was forced to file a third Charge of Discrimination for retaliation on or about June 22, 2021.

77. None of the adverse employment actions and/or events described within above occurred until after the filing of the Plaintiff's EEOC Charge of Discrimination on or about May 11, 2021, and Plaintiff's first Charge of Retaliation on May 20, 2021, giving a causal connection between the adverse employment action or events and the protected activity.

78. Defendant Buffalo Rock intentionally discriminated against Plaintiff by retaliating against her for participating in a protected activity.

79. Defendant Buffalo Rock's retaliatory action against Plaintiff, in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, was intentional and was done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

80. Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem, and other damages as a direct result of Defendant Buffalo Rock's unlawful retaliation.

**WHEREFORE,** Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring the Defendant Buffalo Rock 's past practices herein complained of to be unlawful.

B. Order Defendant Buffalo Rock to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C. Order Defendant Buffalo Rock to make whole the Plaintiff by providing other affirmative relief necessary to eradicate the effects of Defendant Buffalo Rock's unlawful employment practices.

D. Order Defendant to make whole the Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to

emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial.

E. Award punitive damages to be determined by a jury at trial.

F. Grant such further relief as the Court deems necessary and proper.

## COUNT III

## CIVIL BATTERY AGAINST GISSENDANNER

81. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-10 and 13-16.

82. This is a claim arising under the laws of the State of Alabama for Battery against Gissendanner.

83. On May 4, 2021, Gissendanner approached the Plaintiff from behind and intentionally grabbed her on the arm.

84. This grabbing was done with intent to harm and with such excessive force that Plaintiff was yanked backwards and pulled towards Gissendanner.

85. Plaintiff asked him to stop but he would not let go.

86. Even after the Plaintiff expressed that he was hurting her he did not let go.

87. Plaintiff was left with bruises and blood blisters on her arm after this incident.

88. Plaintiff later had to get a tetanus shot because of Gissendanner's violent acts.

89. After grabbing Plaintiff's arm, Gissendanner further tried to force Plaintiff into his office, causing the Plaintiff to fear for her physical safety.

90. This unlawful, intentional, and harmful physical act constituted a battery of the Plaintiff by Charles Gissendanner.

91. Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem and other damages as a direct result of Gissendanner's unlawful civil battery.

**WHEREFORE**, Plaintiff demands judgment against Defendant Gissendanner in an amount that a Jury deems to be reasonable and fair, plus interest and costs of this proceeding, and prays that this Honorable Court will grant such further relief as the Court deems necessary and proper.

## COUNT IV

## RESPONDEAT SUPERIOR AS TO BUFFALO ROCK

92. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-10 and 13-16.

93. This is a claim arising under the laws of the State of Alabama for Responsdeat Superior.

94. Starting around August of 2020 Gissendanner, an employee and Chief Operations Officer of Defendant Buffalo Rock, began harassing the Plaintiff.

95. On May 4, 2021, Gissendanner came up behind the Plaintiff and aggressively grabbed her on the arm.

96. This grabbing was done with such excessive force that Plaintiff was yanked

backwards and pulled towards Gissendanner.

97. Plaintiff asked him to stop but he would not let go.

98. Even after the Plaintiff expressed that he was hurting her he did not let go.

99. Plaintiff was left with bruises and blood blisters on her arm after this incident.

100.    Plaintiff later had to get a tetanus shot because of Gissendanner's violent acts.

101.    After grabbing Plaintiff's arm, Gissendanner further tried to force Plaintiff into his office, causing her to fear for her physical safety.

102.    Plaintiff had to leave work as she was terrified and crying due to the pain she was in.

103.    Prior to and after this incident Plaintiff reported Gissendanner to HR but nothing was done to stop the treatment she was subjected to.

104.    Gissendanner was acting in the line and scope of his employment as he was attempting to discipline the Plaintiff for inquiring about why other employees were treated different than her.

105.    Further, Gissendanner was employed and on the clock with Defendant Buffalo Rock when this incident occurred.

106.    Because of the Defendant Buffalo Rock's failure to stop Gissendanner's treatment of the Plaintiff, after her numerous reports to HR and managers, the Defendant Buffalo Rock ratified his conduct.

107.    Further, due to the Defendant Buffalo Rock's failure to stop Gissendanner's treatment of the Plaintiff after her numerous reports to HR and managers, Defendant Buffalo Rock implicitly approved of his conduct.

108.    Defendant Buffalo Rock had actual knowledge of Defendant's conduct and of the May 4, 2021, incident.

109.    Defendant Buffalo Rock knew that Gisssendanner was directing this conduct towards the Plaintiff and did nothing to stop it.

110.    Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem, and other damages as a direct result of the conduct alleged above.

**WHEREFORE**, Plaintiff demands judgment against Defendant Buffalo Rock in an amount that a Jury deems to be reasonable and fair, plus interest and costs of this proceeding and prays that this Honorable Court will grant such further relief as the Court deems necessary and proper.

## COUNT V

## FAILURE TO TRAIN AND SUPERVISE AS TO BUFFALO ROCK

111.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-10 and 13-16.

112.    This is a claim arising under the laws of the State of Alabama to redress the failure to train and supervise of Gissendanner by Defendant

Buffalo Rock.

113.      Defendant Buffalo Rock had a duty to provide the Plaintiff with a reasonably safe work environment and to follow the law.

114.      Starting around August of 2020 Gissendanner began subjecting Plaintiff to unwelcomed harassment.

115.      On a near daily basis Gissendanner would call the Plaintiff a "stupid b****."

116.      On a near daily basis Gissendanner would call the Plaintiff a "dumb a**."

117.      When new employees were hired Gissendanner would talk to them about how the Plaintiff was "no good."

118.      Gissendanner would also tell new employees that Plaintiff was a troublemaker, despite the fact that she had never been discipled with the Defendant Buffalo Rock.

119.      Gissendanner would constantly yell at the Plaintiff and tell her she just "needed to leave."

120.      Around February of 2020 Gissendanner came into the Plaintiff's office in a hostile manner while she was working, yelled "what are you doing," and threw all the papers off her desk onto the floor, requiring her to pick them up.

121.      This unwanted harassment culminated on or about May 4, 2021.

122.     On May 4, 2021, Gissendanner came up behind the Plaintiff and aggressively grabbed her on the arm.

123.     This grabbing was done with such excessive force that Plaintiff was yanked backwards and pulled towards Gissendanner.

124.     Plaintiff asked him to stop but he would not let go.

125.     Even after the Plaintiff expressed that he was hurting her he did not let go.

126.     Plaintiff was left with bruises and blood blisters on her arm after this incident.

127.     Plaintiff later had to get a tetanus shot because of Gissendanner's violent acts.

128.     Prior to coming up behind her and grabbing her arm Gissendanner called the Plaintiff a "dumb a**."

129.     After grabbing the Plaintiff's arm, Gissendanner tried to force Plaintiff into his office, causing the Plaintiff to fear for her physical safety.

130.     Plaintiff fled to the bathroom and to report what had occurred to another supervisor, Ryan Faust, which was company policy.

131.     Plaintiff had to leave work as she was terrified and crying due to the pain she was in.

132.     Prior to and after this incident Plaintiff reported Gissendanner to HR

but nothing was done to stop the treatment she was subjected to.

133.    Plaintiff has a good faith belief that Gissendanner had subjected other women to similar treatment and that Defendant Buffalo Rock was aware but did not do anything to stop him.

134.    Because of the Defendant Buffalo Rock's failure to stop Gissendanner's treatment of the Plaintiff, after her numerous reports to HR and managers, Defendant Buffalo Rock ratified his conduct.

135.    Even after Plaintiff's numerous reports to HR and managers, Gissendanner's conduct continued.

136.    Defendant Buffalo Rock did not take adequate steps to investigate the Plaintiff's complaints or discipline Gissendanner, resulting in a failure to supervise.

137.    Defendant Buffalo Rock allowed Gissendanner to remain in a position where he could abuse his authority and continue subjecting Plaintiff to unlawful conduct, resulting in a failure to supervise and failure to train.

138.    Had Defendant Buffalo Rock monitored and/or supervised the situation more carefully, Gissendanner would not have repeated the acts of misconduct, resulting in a failure to supervise.

139.    Defendant Buffalo Rock, based on Plaintiff's numerous reports, knew of Gissendanner's pattern of inappropriate conduct in the workplace and did

nothing to stop it.

140.    If Defendant Buffalo Rock had proper equal employment training in place, these actions would not have occurred, resulting in a failure to train.

141.    Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem, and other damages as a direct result of the conduct alleged above.

**WHEREFORE**, Plaintiff demands judgment against Defendant Buffalo Rock in an amount that a Jury deems to be reasonable and fair, plus interest and costs of this proceeding, and prays that this Honorable Court will grant such further relief as the Court deems necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff demands trial by jury.

Respectfully submitted,

/s/ *D. Jeremy Schatz*
D. Jeremy Schatz
ASB-2400-H34Y
*Attorney for Plaintiff*

/s/ Raymond C Foushee
Ray Foushee
ASB-9344-x13g
*Attorney for Plaintiff*

**<u>OF COUNSEL:</u>**

Virtus Law Group
100 41st Street South, Suite A
Birmingham, AL 35222
Phone: (205) 946-1924
js@vlgal.com

## CLERK: PLEASE SERVE VIA CERTIFIED MAIL:

Buffalo Rock Company
C/O C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104


Charles Gissendanner
5775 Charles Hamilton Road
McCalla, AL 35111

# Exhibit 1

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Monica Antinoro**
     **P.O. Box 1644**
     **Gardendale, AL 35071**

From:  **Birmingham District Office**
       **Ridge Park Place**
       **1130 22nd Street South**
       **Birmingham, AL 35205**

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **420-2021-01810** | **TAMMY L. KIRK,**<br>**Investigator** | **(205) 651-7052** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*/for* **BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:  **BUFFALO ROCK COMPANY**
     **c/o Donna West, Attorney**
     **111 Oxmoor Road**
     **Birmingham, AL 35209**

     **Olivia Hill, Esq., Attorney at LAw**
     **1501 Decatur Highway**
     **Gardendale, AL 35071**

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc: